UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| ADAM CANDEUB, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 5:06-cv-63 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| MICHIGAN, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a civil action brought by two *pro se* plaintiffs against Blue Cross Blue Shield of Michigan. Plaintiff Adam Candeub is an assistant professor of law at the Michigan State University School of Law and is a participant in the law school's health care plan. Plaintiff Julie Taiber is the wife of Professor Candeub and is a beneficiary under the health care plan. At all relevant times, defendant Blue Cross Blue Shield of Michigan (BCBSM) provided a policy of group health insurance under contract with the law school, which provided health care coverage under the law school plan. The claims in plaintiffs' third amended complaint (docket # 61) arise from the denial of plaintiffs' claim for benefits under the group policy covering services provided by nurse midwives in October 2004 relating to the birth of plaintiffs' daughter. BCBSM denied plaintiffs' claim, asserting that the nurse midwife services procured by plaintiffs were not covered under the Plan documents.

Among the other claims in the third amended complaint, plaintiffs assert causes of action under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.  Count 6 asserts an ERISA claim for recovery of benefits pursuant to section 502(a)(1)(B).  29 U.S.C. § 1132(a)(1)(B).  In addition to a claim for benefits arising from the Plan documents themselves, plaintiffs assert a theory of equitable or promissory estoppel, based on representations in favor of coverage of midwife services allegedly made by representatives of the insurer.  (Count 3).  Plaintiffs also bring ERISA claims under section 502(a)(3) for equitable relief to redress  a breach of fiduciary duty.  29 U.S.C. § 502(a)(3).  (Counts 1, 2, 3 and 4).

Pursuant to the requirements of the case management order, BCBSM has now filed the administrative record, and the parties have filed a series of motions and briefs addressed to the procedural and substantive issues relating to plaintiffs' claim for benefits under section 502(a)(1)(B).  (Defendant's Motion to Affirm Administrative Decision (docket # 31) and supporting brief (docket # 32); Plaintiffs' Motion for Judgment on Partial Findings (docket # 33) and supporting brief (docket # 34); defendant's responsive brief (docket # 39), and plaintiffs' reply brief (docket # 43)).  Under *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609 (6th Cir. 1998), the court's review of a claim for ERISA benefits under section 502(a)(1)(B) must be based upon the administrative record alone.  The parties have consented to the dispositive jurisdiction of a magistrate judge.  (*See* Consent and Order of Reference, docket # 12).  Upon review of the administrative record, the court finds that plaintiffs have established a meritorious claim for prenatal and postnatal benefits, but not for delivery benefits.  The court will therefore require defendant to certify the benefits due, and a partial judgment for plaintiffs will be entered on count 6.  Plaintiffs' claims that rely upon facts outside the administrative record, including their claim for promissory or equitable estoppel and for breach of

fiduciary duty, cannot be determined on the present record and will therefore be scheduled for evidentiary hearing.

## Findings of Fact

**A.    ERISA Plan**

      1.     The Michigan State University College of Law ("the law school") maintains a number of benefit plans for its employees.  The law school issued a single summary plan description (SPD) covering all such plans, including a life insurance plan, long-term and short-term disability plans, dental plan, and flexible spending account.  Additionally, the SPD covered the medical plan at issue in this case.  (*See* SPD, AR 326-340).

      2.     The SPD did not set forth a description of the benefits provided by any of the several plans that it covered.  Rather, the first page of the SPD indicated that "benefits under this Plan are provided through the insurance carriers noted on the following page."  The SPD emphasizes that it supplements the certificates and benefit booklets provided by the insurance carriers and that, in the case of conflict, the certificate and benefit booklets issued by the insurance carriers "will govern and control."  (AR 327).  "It is important to note that the benefit certificates issued by the insurance carriers control and that the Employer is merely providing this coverage in conjunction with the insurance carriers."  (SPD, AR 328).

      3.     Relevant to the claims in the present case, the law school's medical plan is identified as "fully-insured."   Defendant BCBSM is identified in the SPD as the "insurance carrier/claims administrator" of the medical plan.  (AR 328).

      4.     Under the heading "Plan Administration," the SPD provides as follows:

This Plan is administered by the Plan Administrator.  The Plan Administrator has full discretion and authority to: administer the Plan, interpret the Plan; determine eligibility for and the amount of benefits; determine the status and rights of participants, beneficiaries and other persons; to make rulings; make regulations and prescribe procedures; gather needed information; to prescribe forms; exercise all of the power and authority contemplated by the Internal Revenue Code with respect to the Plan; employ or appoint persons to help or advise in any administrative functions; appoint investment managers and trustees; and generally do anything needed to operate, manage and administer the Plan.  The Plan Administrator reserves the right to change employee Contributions in its sole discretion.  The Plan Administrator has full discretionary authority and control over the Plan, including that contemplated by the U.S. Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*.

This Plan has other fiduciaries, advisors and service providers.  The Plan Administrator may allocate fiduciary responsibility among the Plan's fiduciaries and may delegate responsibilities to others.  Any allocation of delegation must be done in writing and kept with the records of the Plan.

Each Fiduciary is solely responsible for its own improper acts or omissions.  No fiduciary has the duty to question whether any other fiduciary is fulfilling all of the responsibilities imposed upon the other fiduciary by law.  Nor is a fiduciary liable for a breach of fiduciary duty committed before it became, or after it is stopped being, a fiduciary.

(SPD, AR 337).  The SPD earlier identified MSU College of Law as both Plan Sponsor and Plan Administrator.  (*Id.*, 328).

     5.    The substantive provisions of medical coverage for employees of the law school covered by the health insurance involved in this case are set forth in a document called "Community Blue Group Benefits Certificate" (the "Group Certificate").  (AR 13-109).  The first page of the certificate informed the reader that the certificate, the application, and the Blue Cross Blue Shield identification card constitute the contract.  The same page also informed the reader that riders may make changes to the Group Certificate.  (AR 14).

6.      Relevant to the claim now before the court, the Group Certificate contained Rider CNM covering certain services by certified nurse midwives.  (AR 110-13).  Rider CNM provides as follows:

II.      SERVICES WHICH ARE PAYABLE

We pay the approved amount for the following services when provided by a Certified Nurse Midwife:

- ■    Normal vaginal delivery when provided in:
  1.      an inpatient hospital setting or
  2.      a birthing center which is hospital affiliated, state licensed and accredited as defined and approved by BCBSM.
- ■    Pre-natal care
- ■    Post-natal care, including a Papanicolau (PAP) smear during the six week visit.

(AR 111).

7.      Defendant BCBSM also issued a document called "Your Benefits Guide" (the "Guide").  (AR 238-325).  The Guide states that it is intended to be a "general summary of your coverage," but not a legal contract.  It states that the certificates and riders that apply to coverage constitute the legal contract.  (AR 240).

8.      Under section 6B, entitled "Physicians Benefits," the Guide provides as follows:

**Maternity Care**

Your benefits include delivery and pre- and post-natal services.  The initial inpatient examination of the newborn is a benefit when performed by a physician other than the anesthesiologist or the delivering physician.

(AR 284).

**B.      Events Leading Up to Claim**

9.      Plaintiff Adam Candeub is employed by MSU College of Law as an associate professor and is a participant in the Plan.  His wife, Julie Taiber, is a beneficiary of the Plan.

10.      Plaintiffs allege that in June 2004, before selecting the BCBSM plan for health coverage, plaintiff Candeub asked an unnamed BCBSM representative whether midwife births were covered by insurance.  He was referred to the "Your Benefits Guide," but insurance company personnel allegedly did not make available to him a copy of the insurance certificate.

11.      Plaintiffs further allege that on some unspecified date Candeub asked Randy Avery, the law school's benefits manager, to inquire of insurance representatives concerning coverage for midwife services.  Plaintiffs allege that Avery talked to an unidentified insurance company representative, who assured Avery that such births were covered.  Relying on such information, plaintiffs assert that they chose the BCBSM plan for health coverage.

12.      On October 19, 2004, plaintiff Julie Taiber gave birth to a daughter, Lucy Susannah, at the Greenhouse Birth Center in Okemos, Michigan, under the care of nurse practitioners Barbara Kozlowski, R.N., C.N.M. and Clarice Winkler, R.N., C.N.M.

13.      The Greenhouse Birth Center in Okemos, Michigan, is not an inpatient hospital or a birthing center that is hospital-affiliated and accredited by BCBSM.  Furthermore, nurse midwives Kozlowski and Winkler are not credentialed by BCBSM.

14.      Nurse midwives Kozlowski and Winkler charged plaintiffs a total of $3,600: $1,800 for prenatal care and $1,800 for services attendant to the delivery and postpartum care.  (AR 152).  Plaintiffs paid the $3,600 fee in full and submitted a claim to BCBSM in December 2004.

### C.   Administrative Proceedings

15.    BCBSM delayed the processing of plaintiffs' claim for benefits, apparently because the file was lost or misplaced.  After persistence by plaintiffs in pursuing their claim, BCBSM ultimately denied the claim on May 27, 2005, on the ground that the services provided by the Greenhouse Birth Center were not in an inpatient hospital setting, nor was the birthing center affiliated with a hospital or approved by BCBSM.  Furthermore, the rejection letter noted that the midwives were not "accredited" as an approved provider and were not "registered with" BCBSM. (AR 166).

16.    Plaintiffs pursued their administrative appeals, arguing that the services were indeed covered by the plan, that insurance company representatives had misled plaintiffs concerning the scope of coverage, and that the denial violated provisions of state law.  (AR 168-69).  By letter dated June 28, 2005, BCBSM upheld the denial of the claim, reiterating that the midwife services performed did not fall within the scope of Rider CNM and that the midwives were not credentialed with the insurance company.  (AR 170-71).  Plaintiffs continued to pursue their administrative remedies through the final "managerial-level conference" stage.  The insurance company's final rejection of plaintiffs' appeal was communicated in a letter dated September 14, 2005.  (AR 181-82).

17.    On October 17, 2005, plaintiffs initiated a request for external review with the Michigan Office of Financial and Insurance Services, pursuant to the Patient's Right to Independent Review Act, MICH. COMP. LAWS § 550.1901.  (AR 183-84).  The record contains the submissions made by plaintiffs (AR 209-237) and by BCBSM (AR 192-95).

18.    By order issued January 23, 2006, the Michigan Commissioner of Financial and Insurance Services upheld the denial of plaintiffs' insurance claim.  (AR 203-08).  The Insurance

Commissioner found that the delivery services provided by the Greenhouse Birthing Center were not a covered benefit under Rider CNM.  The Commissioner also accepted the insurance company's argument that prenatal and postnatal care were not compensable because the midwives were not "credentialed" by BCBSM, but the Commissioner cited no authority that requires credentialing as a prerequisite to coverage.  The Commissioner rejected plaintiffs' reliance on Mich. Comp. Laws § 550.1416d, as that statute was not in effect at the date the services were rendered.  The Commissioner did not decide whether the insurance company had made representations upon which plaintiffs had relied, pointing out that the grant of equitable relief was outside the Commissioner's authority, whose role "is limited to determining whether a health plan has properly administered health care benefits under the terms of the applicable insurance contract in state law."  (AR 207).

## Discussion

### I.    Standard of Review

At the outset, the court must determine whether an "arbitrary and capricious" or a *"de novo"* standard of review applies to the decision to terminate plaintiff's long-term disability benefits.[1]  The *de novo* standard of review is the general rule, and the arbitrary and capricious standard of review is the exception.  A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire*

---

[1] "Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits, brought under 29 U.S.C. § 1132(a)(1)(B), because the district court is limited to the evidence before the plan administrator at the time of its decision, and therefore, the court does not adjudicate an ERISA action as it would other federal civil litigation." *Buchanan v. Aetna Life Ins. Co.*, 179 F. App'x 304, 306 (6th Cir. 2006); *see Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 617-19 (6th Cir. 1998).

& Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc). The Sixth Circuit "has read Firestone v. Bruch to hold that discretion is the exception, not the rule and that the arbitrary and capricious standard does not apply unless there is a clear grant of discretion to determine benefits or interpret the plan." Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994) (emphasis in original); see Anderson v. Great West Life Assur. Co., 942 F.2d 392, 395 (6th Cir. 1991). The party claiming entitlement to review under an arbitrary and capricious standard therefore has the burden of proving that the standard applies. See, e.g., Brooking v. Hartford Life & Acc. Ins. Co., 167 F. App'x 544, 547(6th Cir. 2006). While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret the plan.'" Perez, 150 F.3d at 555 (quoting Wulf, 26 F.3d at 1373) (italics and alteration in original)); see Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 807 (6th Cir. 2002).

Defendant argues that the court's review should be under the arbitrary and capricious standard because the terms of the SPD provided the Plan Administrator with discretion. The SPD states, in pertinent part, as follows:

> This Plan is administered by the Plan Administrator. The Plan Administrator has full discretion and authority to: administer the Plan, interpret the Plan; determine eligibility for and the amount of benefits; determine the status and rights of participants, beneficiaries and other persons; to make rulings; make regulations and prescribe procedures; gather needed information; to prescribe forms; exercise all of the power and authority contemplated by the Internal Revenue Code with respect to the Plan; employ or appoint persons to help or advise in any administrative functions; appoint investment managers and trustees; and generally do anything needed to operate, manage and administer the Plan. The Plan Administrator reserves the right to change employee Contributions in its sole discretion. The Plan Administrator has

full discretionary authority and control over the Plan, including that contemplated by the U.S. Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*.

Courts have consistently interpreted substantially similar policy language as providing discretionary authority and have applied the "arbitrary and capricious" standard to the administrator's determination. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997); *King v. Detroit Med. Ctr.*, No. 01-72992, 2003 WL 23354130, at *2 (E.D. Mich. Sept. 24, 2003); *Parker v. Ross*, 147 F. Supp. 2d 1376, 1379-1380 (M.D. Ga. 2001).

Plaintiffs argue that the foregoing grant of discretion is unavailing to BCBSM, because the SPD grants discretion to the Plan Administrator, MSU College of Law, and not to BCBSM. The delegation of authority by the Plan Administrator to another fiduciary, however, does not in and of itself undermine the arbitrary and capricious standard. "[W]here a named fiduciary with discretionary authority 'properly designates another fiduciary,' then discretionary review 'applies to the designated ERISA-fiduciary as well as to the named fiduciary.'" *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 742 (6th Cir. 2005) (quoting *Madden v. ITT Long Term Disability Plan*, 914 F.3d 1279, 1283-84 (9th Cir. 1990)).[2] ERISA itself establishes the requirements for a proper delegation. 29 U.S.C. § 1105(c)(1) (plan may "expressly" provide for delegation). The terms of the plan are therefore the key to determining whether there has been a "proper" designation. If the plan authorizes delegation by the fiduciary with discretionary authority, the delegation is proper and delegee receives the benefit of the deferential arbitrary and capricious standard. *Lee v. MBNA*, 136 F. App'x at 742. If the plan does not authorize such delegation, only

---

[2]"It is well established" that an ERISA fiduciary may delegate its fiduciary responsibilities to other another named fiduciary or a third party if the plan establishes procedures for such delegation." *Lee v. MBNA*, 136 F. App'x at 742 (citing 29 U.S.C. § 1105(c)(1)).

then does the court apply a *de novo* standard of review to the delegee's determination.  *See Sanford*

*v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) (The  *de novo* standard is "the standard

of review applicable to a decision to revoke benefits when that decision is made by a body other than

the one authorized by the procedures set forth in the benefits plan."); *see also Rubio v. Chock Full*

*O'Nuts Corp.*, 254 F. Supp 2d 413, 423-25 (S.D.N.Y. 2003).

   The SPD itself contains an express authorization to the Plan Administrator to delegate

responsibility to other fiduciaries:

> This Plan has other fiduciaries, advisors and service providers.  The Plan
> Administrator may allocate fiduciary responsibility among the Plan's fiduciaries and
> may delegate responsibilities to others.  Any allocation of delegation must be done
> in writing and kept with the records of the Plan.

(SPD, AR 337).  Pursuant to the general provision of the SPD, the law school and BCBSM entered

into a Group Enrollment and Coverage Agreement dated June 2002, which contained the following

provision regarding delegation:

> 9. **ERISA Fiduciaries**.  If the Group's health care Plan is subject to the
> Employee Retirement Income Security Act of 1974 (ERISA), the Group, or
> its designee (other than BCBSM), shall be the Plan Administrator of the
> Group's health care plan under ERISA and shall have all of the
> responsibilities and authority of that position including advising all eligible
> individuals of: (I) available benefits and any changes in benefits; (ii)
> termination of coverage for any reason, including the failure to make any
> payments when due; and (iii) their COBRA rights if any.
>
> Except for its status as the named claims administrator for purposes of
> Section 503 of ERISA, BCBSM is not a named fiduciary for any purposes
> under ERISA and its responsibilities are limited to the processing and
> payment of claims.  As the named claims administrator, BCBSM shall have
> the power and discretion to construe the terms of, and to determine all
> questions pertaining to the administration, interpretation, and application of
> this Agreement, certificates and riders that involve eligibility for the benefits
> and the payment or denial of claims.

(AR 9).  In an unpublished opinion, Judge Nancy Edmunds of the Eastern District of Michigan reviewed the identical language in the Group Enrollment and Coverage Agreement, finding that it was sufficient to invest BCBSM with discretionary authority and that the arbitrary and capricious standard therefore applied.  *St. John Hosp.-Macomb v. Auto Club Ins. Ass'n*, No. 04-73407 (E.D. Mich. Aug. 4, 2006) (unpublished) (Ex. A to Def't's Response Brief at 3-4, docket # 39).

Plaintiffs nevertheless persist in their contention that the *de novo* standard applies, as the law school was the only party granted discretion to interpret the Plan.  Plaintiffs argue that the quoted language of paragraph 9 of the Group Enrollment and Coverage Agreement is narrow, because it provides that BCBSM is not a named fiduciary for any purpose under ERISA other than for the processing and payment of claims.  Plaintiffs argue that BCBSM has only "ministerial discretion," whereas the law school retains "full discretion" to interpret the Plan.  (Plf. Reply Brief at 5, docket # 43).  Plaintiffs' assertions are unpersuasive.  Paragraph 9 clearly invests BCBSM, as claims administrator, with the "power and discretion to construe the terms of, and to determine all questions pertaining to, the administration, interpretation, and application of this Agreement, certificates and riders that involve eligibility for the benefits and the payment or denial of claims." (AR 9).  There is nothing ambiguous about this broad grant of authority over claims administration and the interpretation of the Plan documents in connection therewith.  The limiting language in paragraph 9 seeks to cabin BCBSM's fiduciary responsibility to the processing and payment of claims, but within that realm, its delegated powers are sweeping.  This is consistent with ERISA, 29 U.S.C. § 1002(21)(A), which recognizes that a person is a fiduciary only "to the extent" that he performs fiduciary functions. Fiduciary status under ERISA need not be an "all-or-nothing" concept. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F. 3d 1267, 1277 (11th Cir. 2005); *see Bank of*

*Louisiana v. Aetna U.S. Healthcare, Inc.*, No. 04-30986, ___ F.3d ___, 2006 WL 295792, at * 4 n.13 (5th Cir. Oct. 18, 2006).  Contrary to plaintiffs' argument, BCBSM has not renounced all fiduciary responsibility, but has sought only to limit its responsibility to those functions related to the processing, payment, or denial of claims.

The Sixth Circuit's decision in *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734 (6th Cir. 2005), is controlling.  In *Lee*, plaintiff argued that review should be *de novo*, because of an improper delegation of decisionmaking authority.  The court began its analysis by affirming the principle that an ERISA fiduciary "may delegate its fiduciary responsibilities to another named fiduciary or a third party *if the plan establishes procedures for such delegation.*"  136 F. App'x at 742 (emphasis added) (citing 29 U.S.C. § 1105(c)(1)).  Turning to the SPD, the court found a provision expressly allowing the plan administrator to delegate "discretionary authority" to claims administrators and other persons was sufficient to satisfy the requirements of 29 U.S.C. § 1105(c)(1).  "[W]hat is required is, if delegation is desired, that the instrument provide for the delegation procedures."  136 F. App'x at 742.  The court therefore held that the delegation was proper and that the plan administrator did not forfeit the benefit of the arbitrary and capricious standard established elsewhere in the plan.  The court distinguished cases such as *Rubio v. Chock Full O'Nuts Corp.*, 254 F. Supp. 2d 413 (S.D.N.Y. 2003), on the ground that the plan in *Rubio* did not expressly allow for delegation.  136 F. App'x at 743.

The delegation of authority in the SPD is at least as clear as that found adequate by the Sixth Circuit in *Lee*.  The provisions of paragraph 9 of the Group Enrollment and Coverage Agreement (AR 9) emphasize BCBSM's "power and discretion" to construe the terms of the Plan documents and make decisions involving the eligibility for benefits and the payment or denial of

-13-

claims.  By limiting BCBSM's fiduciary responsibility to these enumerated areas, paragraph 9 does

not have the anomalous effect, argued by plaintiffs, of stripping BCBSM of all discretion.  To the

contrary, the SPD and paragraph 9 make it pellucid that BCBSM enjoys delegated discretionary

authority in the area of Plan interpretation and the granting and denial of claims.[3]

   This court therefore concludes that the arbitrary and capricious standard will apply.

In the present case, however, the question of standard of review is not dispositive.  In fact-intensive

cases, such as those involving disability determinations in the face of conflicting medical opinions,

the arbitrary and capricious standard tends to give wide latitude to the claims administrator.  In the

present case, however, the underlying facts are not disputed, and the issue involves only

interpretation of the Plan documents.  Consequently, the result in this case would likely be the same

under either standard of review.


## II.     Review Under Plan Documents

   This court must therefore review the decision of the claims administrator under the

arbitrary and capricious standard, taking into account only the record that was before the Plan

Administrator.  *See Wilkins*, 150 F.3d at 615.  Under Sixth Circuit authority, the court will uphold

a benefit determination under the arbitrary and capricious standard if it is rational in light of the Plan

provisions.  *See Smith v. Continental Cas. Co.*, 450 F.3d 253, 258 (6th Cir. 2006).  One of the factors

that the court must take into account in reviewing the rationality of the decision is whether the

decision maker was acting under a conflict of interest.  In this case, BCBSM was acting under a

---

[3] Plaintiffs also argue that the delegation was void because it was not kept with the records of the Plan, as required by the SPD.  Plaintiffs cite no decision of any court voiding an otherwise proper delegation on such trifling grounds.

conflict of interest, because it both determined and was responsible for paying benefit claims.  *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005).  The Sixth Circuit has remarked that where there is a monetary incentive for the insurance company to deny a claim, the potential for self-interested decision-making is evident.  *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2002).  Because a conflict exists in this case, review is less deferential.

As the underlying facts in this case are not disputed, resolution of plaintiffs' claim under section 502(a)(1)(B) requires only an interpretation of the provisions of the Plan and application of those provisions to the uncontested facts.  The court must construe the ERISA plan with a view toward effectuating its general purpose.  *See Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1374 (6th Cir. 1994).  The court's analysis must begin with the "language of the Plan, the starting point for interpreting any written instrument."  *Id.*  ERISA plans should be interpreted "according to their plain meaning, in an ordinary and popular sense."  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998); *see University Hosps. of Cleveland v. South Lorain Merch. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006).  In doing so, the court should read the terms of the plan as would a person of average intelligence and experience.  *Perez*, 150 F.3d at 556.  Courts must give effect to the unambiguous terms of an ERISA plan when applying this analysis.  *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 617-18 (6th Cir. 2002).  ERISA plans, like any other contract, must be construed as a whole.  *Allison v. Bank One-Denver*, 289 F.3d 1223, 1233 (10th Cir. 2002).

The only Plan document that specifically addresses coverage for nurse midwife services is Rider CNM.  The rider obliges BCBSM to pay the approved amount for three separate services provided by a certified nurse midwife.  First, the insurance company will pay for normal

vaginal delivery when provided in an inpatient hospital setting or in an accredited birthing center. (AR 111). Second, the insurance company will pay for prenatal care. (*Id.*). Finally, it will pay for postnatal care, including a PAP smear. (*Id.*). The provisions covering pre- and postnatal care, unlike those covering delivery services, do not require that the care be provided in an inpatient hospital setting or affiliated birthing center.

The invoice covering services rendered by nurse midwives Kozlowski and Winkler indicate a $1,800 charge for prenatal care and a $1,800 charge for delivery services and postpartum care. (AR 114). The delivery services are clearly excluded from coverage under Rider CNM. It is undisputed that the Greenhouse Birthing Center used by plaintiff Taiber was not in an "inpatient hospital setting" and was not "hospital affiliated" and "accredited as defined and approved by BCBSM." (AR 111). Therefore, the delivery services were excluded from coverage. These preconditions, however, do not apply to prenatal or postnatal care.

In an effort to justify denial of the claim for prenatal or postnatal care, BCBSM asserts that nurse midwives Kozlowski and Winkler were not "credentialed" with BCBSM. Defendant, however, cites to no provision of the Plan documents that requires "credentialing" as a prerequisite for coverage. Likewise, in their presentation to the Michigan Office of Financial and Insurance Services, the insurance company asserted its right to insist on credentialing without citation to the Plan documents, state law, or any other source of authority that would allow the insurance company to deny a claim for benefits because the provider was "uncredentialed." The court's own review of the Plan documents does not disclose any requirement that a provider be "credentialed." The Group Certificate's paragraph on "unlicensed providers" does provide that benefits are not payable for services provided by persons "who are not legally qualified or licensed

-16-

to provide such services." (AR 91).  Nurse midwives, however, are licensed healthcare professionals under the Michigan Public Health Code and are allowed to practice nurse midwifery within the scope of their certification.  *See* MICH. COMP. LAWS § 333.2701(b).  The record does not reflect any reason to conclude that Ms. Kozlowski or Ms. Winkler was an "unlicensed provider" within the meaning of the Group Certificate.  Rider CNM also draws a distinction between "participating" and "non-participating" nurse midwives.  (AR 112).  The Group Certificate and the Benefits Guide likewise differentiate between providers who are "in network" and "non-network."  (*See, e.g.,* Guide, AR 257-58).  The terms seem interchangeable.  The issue here is not "credentialing," but whether the particular healthcare provider participates in the BCBSM system.  In the case of non-network providers, the insured may be required to pay a higher deductible, and the coverage may be limited in other ways.  The Plan documents, however, do not exclude coverage in the case of non-network providers, but only limit the benefits available.  Consequently, although the nurse midwives may have been "non-participating," and benefits therefore may have been limited, these Plan provisions do not purport to exclude coverage altogether.

When reviewing a denial of benefits under the ERISA "arbitrary and capricious" standard, the court is to ask whether there is a reasonable basis for the decision and whether it is rational in light of the Plan's provisions.  *See Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006); *Emerson*, 202 F.3d at 846; *Davis v. Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir. 1989).  BCBSM has not cited to this court any Plan provision (or other source of binding authority) that would allow it to deny the claim for prenatal or postnatal care on the ground that the nurse midwives were not "credentialed."  Consequently, although the decision to deny coverage for delivery services was rational in light of the clear provisions of Rider CNM, the denial of the claim for prenatal and

postnatal benefits was not.  The court will therefore order defendant to determine and certify to the court the benefit payable under the Plan documents (after appropriate co-pays, deductibles, etc.) for prenatal and postnatal care rendered in the present case.  Judgment will be entered in favor of plaintiffs for the amount certified.

Plaintiffs advance a number of arguments in favor of complete coverage for their claim.  These arguments range from the unpersuasive to the frivolous, especially in light of plaintiff Candeub's status as a law professor.  The court takes up each of these arguments below.

*The Guide Is Really An SPD.*  As noted above, the law school issued an SPD covering all of its benefit plans.  The SPD did not set forth any of the details of coverage for any plan, but referred the reader to the appropriate insurance certificate and benefit booklets.  Noting the failure of the law school's SPD to set forth the terms of coverage, plaintiffs argue that the "Your Benefits Guide" booklet issued by BCBSM must therefore be deemed an SPD.  Relying on this faulty premise, plaintiffs then invoke the well-settled Sixth Circuit principle that if the statements in an SPD conflict with those in the Plan itself, the SPD governs.  *See, e.g., Yolton v. El Paso, Tenn. Pipeline Co.*, 435 F.3d 571, 582 n.10 (6th Cir. 2006); *Edwards v. State Farm Mut. Auto Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988).  Plaintiffs' circular argument does not withstand scrutiny.

ERISA itself imposes upon the Plan Administrator the duty to provide participants with a summary plan description, or SPD.  29 U.S.C. § 1021(a)(1).  The SPD is a "statutory plain-language mechanism for informing plan participants of the terms of the plan and its benefits."  *Hicks v. Fleming Cos., Inc.*, 961 F.2d 537, 539-540 (5th Cir. 1992).  The statute sets forth mandatory information to be contained in an SPD, including the name and type of administration of the plan,

-18-

the identity of the agent for service of legal process, the plan's requirements respecting eligibility for participation and benefits, and a number of other items.  29 U.S.C. § 1022(a), (b).  Regulations issued by the Department of Labor significantly extend and amplify ERISA's statutory requirements for mandatory information to be contained in the SPD.  29 C.F.R. § 2520.102-3.  Among the numerous items of information required by the regulation is "a description or summary of the benefits."  29 C.F.R. § 2520.102-3(j)(2).  The regulation goes on to state that in the case of a welfare plan providing extensive benefits, such as a group health plan, only a general description of such benefits is required if reference is made to detailed schedules of benefits which are available without cost to participants.  Plaintiffs assert that the law school's SPD failed to meet the requirement of the regulations and that, as a consequence, the Guide must be deemed an SPD.

Plaintiffs are mistaken.  A substantial body of appellate law rejects efforts to transform benefit booklets issued by insurance companies into SPDs.  The leading case is *Hicks v. Fleming Cos., Inc.*, 961 F.2d 537 (5th Cir. 1992).  In that case, as in the present case, plaintiff asserted that a booklet issued by the insurance company under an ERISA plan should be deemed an SPD and therefore should govern plaintiff's entitlement to long-term disability benefits.  961 F.2d at 539.  Analyzing statutory and common law, the Fifth Circuit determined that a document will constitute an SPD under ERISA only if it contains "all or substantially all categories of information required under 29 U.S.C. § 1022(b) and the DOL's regulations."  *Id.* at 542.  The court remarked that "there should be no accidental or inadvertent SPDs."  *Id.*  "If a document is to be afforded the legal effects of an SPD, such as conferring benefits when it is at variance with the plan itself, that document should be sufficient to constitute an SPD for filing and qualification purposes."  *Id.*  The court held that the insurance booklet did not qualify under this test, because it lacked many of the

-19-

categories of information required by statute and regulation.  *Accord, Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1274-75 n.8 (11th Cir. 2005); *Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 887-88 (8th Cir. 1999); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1236, 1229-1230 (9th Cir. 1996).

The massive weight of authority, then, is that insurance booklets do not qualify as SPDs, unless they contain all or substantially all of the required information under the statute and regulation.  The only case that plaintiffs can muster for a seemingly contrary view is *Gould v. GTE North, Inc.*, 40 F. Supp. 2d 434 (W.D. Mich. 1999), a decision by Judge Hillman of this court.   In *Gould*, the insurance benefit booklet was expressly represented to be a supplement to the SPD.   In those circumstances, Judge Hillman found it appropriate to treat the benefits booklet in accordance with this representation by the insurance company.  (*Id.* at 445).  *Gould* is inapplicable in the present case, for two reasons.  First, the "Your Benefits Guide" does not purport to supplement the SPD. Second, and more importantly, Judge Hillman vacated his opinion in its entirety by stipulation of the parties.  *Gould v. GTE North, Inc.*, 68 F. Supp. 2d 842 (W.D. Mich. 1999).  Contrary to plaintiffs' representation (Brief at 6, docket # 34; Reply Brief at 7, docket # 43), the opinion was not vacated "on other grounds."  Consequently, even if the reasoning of *Gould* were applicable (and it is not), the case has no precedential value.

Application of the rule of *Hicks* and its progeny reveals that the "Your Benefits Guide" cannot be deemed an SPD, as it contains virtually none of the information required by statute and regulation.[4]  Thus, the "Your Benefits Guide" is not entitled to the controlling effect given to

---

[4] Plaintiffs incorrectly assert that BCBSM is caught in a "catch-22" situation: Because the SPD is allegedly incomplete, BCBSM must either agree that the Guide is an SPD or admit that it failed to comply with the SPD requirements of ERISA and DOL regulations.  As the Sixth Circuit

an SPD.  Nevertheless, the document is relevant, as the SPD itself refers the reader to the certificates and booklets issued by the insurance companies.  Consequently, the Guide, although not controlling, is relevant and should be read together with all other Plan documents.

The Guide, however, is unavailing to plaintiffs.  Plaintiffs point to the provisions of the Guide that indicate, in a very general way, that "maternity care," including delivery and pre- and postnatal services, is covered.  The provisions concerning maternity care (AR 284), however, are contained under section 6B entitled "Physician Benefits," which states "Your coverage provides the following benefits for physician care."  (AR 282).  No reasonable person reading the Guide could conclude that a promise to cover "maternity benefits" when provided by a physician included a promise to cover the same benefits when provided by a nurse midwife.  The only way to come to this erroneous conclusion would be by reading the maternity care paragraph in isolation, heedless of the fact that it appears in the "Physician Benefits" section of the Guide.

In summary, the court rejects plaintiffs' contention that the "Your Benefits Guide" must be treated as if it were a controlling SPD.  Furthermore, nothing in the Guide would lead the ordinary reader to conclude that nurse midwife services are a covered benefit under the Plan.

*Nurse Midwives are Really Nurse Practitioners*.  Plaintiffs also seek refuge in the provisions of Rider CNP, which covers certain services provided by certified nurse practitioners. (AR 231-33).  That rider provides that the insurance company will pay for covered services performed by a certified nurse practitioner, except in a hospital in-patient setting.  (AR 232).

---

has pointed out, any obligation to provide an SPD belongs to the Plan Administrator, not the insurance company/claims administrator.  *Flacche v. Sun Life Assur. Co. of Canada (U.S.)*, 958 F.2d 730, 736 (6th Cir. 1992), *accord Palmisano*, 190 F.3d at 888-89.  Plaintiffs must therefore take up any perceived deficiencies in the SPD with the law school.

-21-

Plaintiffs then assert that nurse midwives are really a kind of nurse practitioner.  Failing that, they argue that the ordinary person would be liable to confuse the two and that coverage should be found on this ground.

Plaintiffs assert, without any support, that "nurse midwives" are a type of "nurse practitioner" and that their services must therefore be covered under the nurse practitioner rider. (Reply Brief at 8, docket # 43).  This argument might appeal to the Queen of Hearts in *Alice's Adventures in Wonderland*, for whom "words mean exactly what I want them to mean."  But interpretation of ERISA plans is not an exercise in post-modern literary criticism, under which words have no intrinsic meaning.  Under Michigan law, nurse practitioners and nurse midwives are separate and distinct.  The Public Health Code allows the Board of Nursing to issue a specialty certification to registered nurses in three distinct specialty fields: nurse midwifery, nurse anesthetist, and nurse practitioner.  MICH. COMP. LAWS § 333.17210.  There is no legal basis for treating these distinct sub-specialties as equivalent.  Contrary to plaintiffs' argument, the statute does not define all nurses with specialized training as nurse practitioners.  The record does not indicate that the medical profession considers nurse midwives to be a subspecies of nurse practitioners, or that the ordinary lay person would confuse the two terms.

Furthermore, no reasonably careful reader of the Group Certificate could conclude that delivery services performed by a nurse midwife would somehow be covered under the nurse practitioner rider.  ERISA plans, like all contracts, must be read as a whole.  Any ordinary reader faced with a specific rider covering prenatal, delivery, and postnatal services by a nurse midwife could not reasonably ignore the specific rider and instead rely on a general rider covering nurse practitioners, which does not mention birthing services at all.  To do so would eliminate the nurse

-22-

midwife rider from the contract, as it would be swallowed up by the nurse practitioner rider. Common sense would tell a reader that the specific rider applied, even if the reader wrongly presumed that nurse midwives were a kind of nurse practitioner.

      *The Law School Approved Plaintiffs' Claim.*  Plaintiffs repeatedly assert, in their third amended complaint and their briefs, that MSU College of Law, as Plan Administrator, stated  in writing its interpretation that all midwife births are covered under the Plan.  If this assertion were true, plaintiffs would be entitled to prevail, as the SPD clearly invests the law school, as Plan Administrator (AR 328), with full discretion and authority to interpret the Plan and to determine eligibility for benefits.  (AR 337).  Consequently, a final determination by the law school in favor of plaintiffs would settle the matter.

      The problem with plaintiffs' position is that the administrative record is devoid of any determination by the law school, as Plan Administrator, that the midwife services at issue herein are covered.  The only communication from an employee of the law school in this regard is a letter from Randy Avery, Accounting Manager of the law school, to the Insurance Commissioner reporting on a conversation that Avery had with an unnamed Blue Cross representative on an unidentified date concerning coverage under the Policy for nurse midwife services.  (AR 237).  Mr. Avery's letter does not purport to be a final determination from the law school as Plan Administrator, and plaintiffs have not cited to any other part of the record that can be construed as an act of the Plan Administrator in this regard.  This argument must therefore fail for lack of factual support.

## **Summary and Conclusion**

The findings of fact and conclusions of law contained in this opinion relate only to plaintiffs' claim for benefits under section 502(a)(1)(B) of ERISA.  Resolution of that claim must be based upon the administrative record reviewed by the Claims Administrator.  The court has applied an arbitrary-and-capricious standard of review modified to take into account defendant's conflict of interest.  As the facts are not disputed, however, and the Plan provisions are clear, the standard of review is not critical.  Applying the plain meaning of the Plan provisions, the court has found that plaintiffs' claim for prenatal and postnatal benefits must be upheld, as Rider CNM provides that such services are covered and does not establish any exclusion.  Defendant's reliance on the fact that the nurse midwives were not "credentialed" with the insurance company does not provide a basis for denying coverage, as credentialing is not a prerequisite to coverage under the Plan documents.  By contrast, Rider CNM excludes coverage for delivery services that are not rendered in an inpatient hospital setting or at an accredited birthing center.  As the Greenhouse Birthing Center is admittedly not an inpatient hospital setting or an accredited birthing center, plaintiffs' claim for delivery benefits must fail.

Defendant will be required to file a schedule within fourteen days hereof, explaining the benefit due under the Group Certificate for prenatal and postnatal care, expressly setting forth the total amount covered and any co-pays, deductibles, and any other adjustments to the total amount due.  Plaintiffs will have seven days thereafter in which to file objections to defendant's schedule.  After such objections, if any, have been resolved, the court will enter partial judgment in favor of plaintiffs on count 6.

This opinion does not resolve plaintiffs' ERISA claim for benefits based on a theory of promissory or equitable estoppel.  Under controlling decisions of the Sixth Circuit, a plaintiff seeking to establish either kind of estoppel must show: (1) defendant's conduct or language amounting to a representation of material facts; (2) defendant's awareness of the true facts; (3) defendant's intention that the representation be acted upon; (4) plaintiff's unawareness of the true facts; and (5) justifiable reliance to plaintiff's detriment.  *See Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (*en banc*); *accord, Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428-29 (6th Cir. 2006).  An estoppel claim "requires proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment."  *Sprague*, 133 F.3d at 398.  The Court of Appeals requires that such claims be adjudicated with "factual precision."  *Id.*  Plaintiffs' estoppel claim is not susceptible to resolution on the present record, as none of the relevant factors has been established with the requisite precision.  The record does not reflect the precise content of the exchange between plaintiff Candeub and the unnamed BCBSM representative, the date and context thereof, and whether plaintiffs had available at the time of the representation the actual terms of the Plan.  Likewise, the subsequent conversation between Randy Avery and an unnamed insurance company representative is devoid of details.  Moreover, the court does not have the benefit of defendant's side of the story, nor is there evidence of any record, or lack of record, in the insurance company's files documenting the alleged exchanges.  The record does not yet establish justifiable reliance or make clear what, if any, alternative coverage plaintiffs might have elected had they been given a more accurate answer.  The vague state of the evidence on these and other factual issues makes resolution of the estoppel claim impossible.

-25-

Plaintiffs also assert a number of claims for a breach of fiduciary duty pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  The Supreme Court has held that claims under section 502(a)(3) are limited to injunctive and other traditionally equitable relief.  *See Varity Corp. v. Howe*, 516 U.S. 489 (1996); *Mertens v. Hewitt Assoc.,* 508 U.S. 348 (1993).  The Sixth Circuit has further cautioned that a claim for breach of fiduciary duty may not be maintained for the mere denial of benefits.  *See Wilkins*, 150 F.3d at 615-16.  In light of these holdings, the metes and bounds of plaintiffs' claims for breach of fiduciary duty are difficult to discern.  The basis of these claims appears to be alleged misrepresentations made by BCBSM employees concerning the scope of nurse midwife coverage under the Plan documents.  The kind of equitable relief that might be ordered to remedy such individual acts of misrepresentation, if they occurred, is also unclear.

This court therefore concludes that neither the estoppel claim nor the claims for breach of fiduciary duty are amenable to resolution on the present record.  These claims will be set for evidentiary hearing on November 29, 2006, at 9:00 a.m.  Although discovery closes on December 15, 2006, the parties should complete any discovery necessary to address the estoppel and breach of fiduciary duty claims in time for the evidentiary hearing.

Dated:   October 24, 2006                          /s/  Joseph G. Scoville
                                                  United States Magistrate Judge

-26-